# Exhibit 1

COMMONWEALTH OF MASSACHUSETTS
SUPERIOR COURT DEPARTMENT

SUFFOLK, SS.                                           CASE NO.

---

STEVEN C. FUSTOLO

     *Plaintiff*

v.

NEWREZ LLC DBA SHELLPOINT
MORTGAGE SERVICING AND
U.S. BANK TRUST NATIONAL
ASSOCIATION, NOT IN ITS INDIVIDUAL
CAPACITY BUT SOLELY AS OWNER
TRUSTEE FOR VRMTG ASSET TRUST

     *Defendants*

**VERIFIED COMPLAINT**

*Jury Trial Demanded*

---

## NATURE OF THE CASE

1.     The is an action brought by an owner of a residential condominium against the servicer and purported holder of his mortgage to seek a judgment that the most recent mortgage assignment is invalid, and that foreclosure is prohibited. The assignment is invalid because there was no power of attorney recorded in the Suffolk County Registry of Deeds authorizing it to be executed by the third party who signed it. Furthermore, Defendants have committed a variety of unfair and deceptive acts and practices in the course of attempting to collect the loan which violate the federal Fair Debt Collection Practices Act and related Massachusetts statutes and regulations.

## JURISDICTION AND VENUE

2.      The Court has jurisdiction over the Defendants in this action because the Defendants transact business in the Commonwealth, have caused injury in the Commonwealth as described herein, and because they purport to have an interest in real property in the Commonwealth or to be acting on a person with such an interest.

3.      Venue is proper in this Court because the subject property is located in Boston, Suffolk County, Massachusetts.

## PARTIES

4.      Plaintiff, Steven C. Fustolo, ("Fustolo") is a natural person residing in Massachusetts, and is the owner of the subject property located at 115 Salem Street, Unit 11, Boston, Suffolk County, Massachusetts 02113 (the "Property").

5.      Newrez LLC d/b/a Shellpoint Mortgage Servicing ("Newrez") is a Delaware limited liability company with principal offices located at 1100 Virginia Drive, Fort Washington, Pennsylvania 19034. Newrez is the servicer of the mortgage on the Property.

6.      U.S. Bank Trust National Association, Not In Its Individual Capacity But Solely as Owner Trustee for VRMTG Asset Trust ("VRMTG") is a nationally chartered bank with principal offices located at 300 East Delaware Avenue, 8th Floor, Wilmington, Delaware 19809. VRMTG alleges that it is the holder by assignment of the mortgage on the Property.

## COMMON FACTS

A.      **The Invalid Mortgage Assignment.**

7.      The Property is located at 115 Salem Street, Unit 11, Boston, Massachusetts 02113.

8.      Fustolo is the owner of the Property pursuant to a deed recorded in the Suffolk

County Registry of Deeds ("Registry") at book 42920, page 260. (**Exhibit 1**.)

9.  On January 9, 2006, Fustolo mortgaged the Property to Mortgage Electronic

Registration Systems, Inc. as nominee for Countrywide Bank, FSB ("Countrywide"), recorded in

the Registry at book 42950, page 276 ("Mortgage"). A promissory note ("Note") was signed by

Fustolo in connection with the Mortgage. (**Exhibit 2**.) The Mortgage was subsequently assigned

four times, as follows.

10.  On November 8, 2011, the first assignment of mortgage ("Assignment #1"), from

Countrywide to Bank of America, N.A. ("Bank of America"), was recorded in the Registry at

book 48625, page 332. (**Exhibit 3**.)

11.  On May 1, 2015, the second assignment of mortgage ("Assignment #2"), from

Bank of America to Federal National Mortgage Association ("Fannie Mae"), was recorded in the

Registry at book 54396, page 339. (**Exhibit 4**.)

12.  On January 28, 2020, the third assignment of mortgage ("Assignment #3"), from

Fannie Mae to Nationstar Mortgage, LLC ("Nationstar"), was recorded in the Registry at book

62452, page 139. (**Exhibit 5**.)

13.  Finally, on December 16, 2021, the fourth assignment of mortgage ("Assignment

#4"), from Nationstar to defendant VRMTG, was recorded in the Registry at book 66871, page

345. (**Exhibit 6**.)

14.  Assignment #4 was executed not by Nationstar, but on Nationstar's behalf, by its

purported agent, Meridian Asset Services, LLC ("Meridian"). Meridian claimed to be acting

under a power of attorney, and the assignment stated that it was signed by Meridian, as

Nationstar's "ATTORNEY-IN-FACT" (emphasis in original).

15.  However, a review of all of the powers of attorney recorded in the Registry

reveals that there is no power of attorney from Nationstar to Meridian.

16.     Massachusetts law requires that a power of attorney be recorded for any assignment executed under it to be valid. The relevant statutes are G.L. c. 183, § 4, which requires any conveyance of real estate to be recorded, and G.L. c. 183, § 32, which imposes this requirement on powers of attorney. Under G.L. c. 183, § 4, "[a] conveyance … shall not be valid … unless it … is recorded in the registry of deeds for the county or district in which the land to which it relates lies." Moreover, under G.L. c. 183, § 32 "[t]he law relative to the acknowledgment and recording of deeds shall apply to letters of attorney for the conveyance of real estate."

17.     Here, then, a recorded power of attorney from Nationstar to Meridian was required for the assignment executed by Meridian to be valid. Notwithstanding this requirement, there is no such power attorney on record in the Suffolk Registry of Deeds. This renders Assignment #4 ineffective. At best, the Mortgage is held by the assignee of Assignment #3, Nationstar.

18.     As the First Circuit has held, a mortgagor like Fustolo has standing to challenge a void assignment if "the assignor had nothing to assign." *Culhane v. Aurora Loan Servs. of Neb.*, 708 F.3d 282, 291 (1st Cir. 2013).

**B.      Unfair and Illegal Debt Collection by Defendants and Their Agents.**

19.     On information and belief, Fustolo fell behind on Mortgage payments in or around June 2020.

20.     At the time payments fell behind, both the holder of the Mortgage and the servicer of the loan was Nationstar.

21.     Effective October 6, 2021, the servicing of the Mortgage was transferred to

4

Newrez.

22.     As stated above, effective December 16, 2021, the Mortgage was purportedly assigned to VRMTG.

23.     At the time of the servicing transfer, the Mortgage was in default.

24.     At the time of the purported assignment to VRMTG, the Mortgage was in default.

25.     Under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692a(6), a "debt collector" is an entity who is collecting a debt in default at the time the entity attempted collection efforts.

26.     The Mortgage is a "debt" under the FDCPA, 15 U.S.C. § 1692a(5), because it was obtained by Fustolo for personal, family, or household purposes.

27.     Newrez is a "debt collector" subject to the provisions of the FDCPA.

28.     VRMTG is a "debt collector" subject to the provisions of the FDCPA.

29.     On or about November 11, 2022, the foreclosure law firm Bendett &McHugh, P.C. ("Bendett") sent Fustolo a validation notice pursuant to the FDCPA, 15 U.S.C. § 1692g. (**Exhibit 7**.) Such a notice is required to be sent at the initiation of the attempt to collect a debt.

30.     At all times relevant, Bendett acted on behalf of Newrez and VRMTG.

31.     In response, on December 13, 2022, Fustolo, by counsel, sent a request for verification of the debt as is permitted under the FDCPA, 15 U.S.C. § 1692g(b). In Fustolo's letter, he stated, "I request verification of the debt pursuant to the [FDCPA] and pursuant to the debt-collection regulations under to the Code Massachusetts Regulations, 209 C.M.R. § 18.18 and 940 C.M.R. 7.08." (**Exhibit 8**.)

32.     Under the FDCPA, upon receipt of a request for verification, a debt collector is required to cease collection of the debt until such verification is required. *See* 15 U.S.C. §

1692g(b) (stating that if a consumer disputes a debt, then "the debt collector shall cease collection of the debt … until the debt collector obtains verification … and a copy of such verification … is mailed to the consumer ….").

33.     In this case, however, Bendett failed to "cease collection of the debt" as required under 15 U.S.C § 1692g(b). Rather, on December 16, 2022, Bendett filed a Complaint to Foreclose in the Land Court, case number 22 SM 003874. (**Exhibit 9**.) In the Complaint to Foreclose, Bendett, on behalf of VRMTG and Newrez, stated that "The holder of the mortgage seeks to proceed with the foreclosure of said mortgage …."

34.     In response to Bendett's filing, Fustolo began receiving regular and continuous harassing phone calls, text messages and letters from brokers, lawyers, and other third parties seeking to purchase the property, reminding Fustolo that he was in "financial trouble," looking to get access to the property to review in anticipation of the pending foreclosure. Some of the parties who contacted Fustolo knew Fustolo thereby embarrassing Fustolo and impairing his reputation.

35.     After becoming aware of the Complaint to Foreclose, Fustolo, by counsel, sent an email to Bendett on December 20, 2022. In the email, Fustolo stated:

> Under the Fair Debt Collection Practices Act, all collection must cease until verification of the debt is provided. However, it appears that Bendett & McHugh filed the SCRA complaint three days later, on December 16, in violation of applicable law. I respectfully request that you dismiss the SCRA complaint until you provide verification.

(**Exhibit 10**.)

36.     In response, Bendett sent an email apologizing, stating "My apologies – it seems the SCRA complaint was filed in error. We will be dismissing the action and will provide a filed copy of the dismissal when available." (**Exhibit 11**.)

37.     Bendett subsequently filed a Motion to Dismiss the Complaint to Foreclose.

(**Exhibit 12**.)

38.     By filing the Complaint to Foreclose, Bendett violated the FDCPA.

39.     Furthermore, Newrez and VRMTG violated additional provisions of the FDCPA,

including, without limitation:

a.  By mispresenting the owner of the Mortgage in correspondence, notices, and

mortgage statements sent to Fustolo, they violated 15 U.S.C. § 1692e, which

prohibits false or misleading representations;

b.  By attempting to collect and foreclose on the Mortgage, such as by sending

mortgage statements and initiating the Land Court proceeding, they violated

15 U.S.C. § 1692f, which prohibits unfair or unconscionable practices in

connection with the collection of a debt;

c.  By their agent Bendett's unlawful filing of a Complaint to Foreclose, they

committed false and misleading representations under 15 U.S.C. § 1692e,

unfair or unconscionable practices under 15 U.S.C. § 1692f, and violated the

verification provisions of the FDCPA under 15 U.S.C. § 1692g(b).

40.     Massachusetts has debt-collection laws that mirror those of the FDPCA. Newrez

and VRMTG's actions violated such regulations promulgated by the Massachusetts Attorney

General, 940 C.M.R. §§ 7.00, et seq., and 940 C.M.R. §§ 3.00, et seq., the Massachusetts

Division of Banks, 209 C.M.R. §§ 18.00, et seq., the Massachusetts Debt Collection Act, G.L. c.

93, § 49, and the Consumer Protection Act, G.L. c. 93A, which prohibits the same practices as

those stated in the previous Paragraph.

41.     Earlier, on May 6, 2013, an involuntary bankruptcy had been filed against Fustolo

by a creditor in the U.S. Bankruptcy Court for the District of Massachusetts, case no. 13-12692.

(**Exhibit 13**.)  At the outset of Fustolo's bankruptcy, the automatic stay went into effect pursuant

to 11 U.S.C. § 362. The automatic stay requires that, as a matter of law, upon the filing of a

bankruptcy all creditors are prohibited from commencement of any judicial action against, or to

attempt to collect any debt from, a debtor.

     42.    Thus, Defendants also violated the FDCPA and Massachusetts debt-collection

laws and regulations by attempting to collect from Fustolo when the automatic stay prohibited

such collection. Defendants continued sending mortgage statements and sending other

collection-related correspondence to Fustolo in violation of the automatic stay.

     43.    Defendants even reported the account on Fustolo's credit report in an attempt to

collect the debt from him, contending – in violation of the automatic stay – that Fustolo was

presently obligated to tender mortgage payments.

     44.    Defendants' furnishing of this information on Fustolo's report is an attempt to

collect a debt because a debt collector's "ability to report on the credit habits of customers is [a]

powerful tool designed, in part, to wrench compliance with payment terms from its cardholder."

*Rivera v. Bank One*, 145 F.R.D. 614, 623 (D. P.R. 1993).

**C.**    **Fustolo's Damages.**

     45.    As a result of the Defendants' conduct described throughout this Complaint,

Fustolo has suffered a variety of damages. His property is in foreclosure and will soon have a

sale date set. He has been subjected to repeated debt collection efforts in violation of the

automatic stay, and in violation of Massachusetts law. Defendants have, in the course of all their

activities, made false statements about their ability to foreclose, their standing to foreclose, and

their right to collect the associated debt from Fustolo. He has suffered physically and

emotionally from this ordeal, is frequently unable to sleep, and reports significant feelings of stress, tension, and frustration from the ongoing uncertainty about the possible loss of irreplaceable real estate. Fustolo receives regular and continuous harassing and embarrassing calls and other communications from brokers, lawyers, hard money lenders, and other third parties seeking information on the so-called distressed property sale. Some communications received have been from business associates Fustolo knows, thereby damaging Fustolo's reputation within the business community.

## COUNT I:
### Declaratory Judgment: Defendants Have No Right To Foreclose Because There Is No Unity Of The Mortgage And Note

46.     The preceding allegations are hereby incorporated by reference.

47.     Massachusetts is a non-judicial foreclosure state allowing a mortgagee to foreclose under a general power of sale. G.L. c. 244, §§ 11-17C. To challenge the right of a purported mortgagee to foreclose, a homeowner may file an affirmative action under the declaratory judgment statute. G.L. c. 231A, § 1.

48.     Once a homeowner files an affirmative lawsuit challenging a mortgagee's right to foreclose, the burden shifts to the mortgagee to prove its entitlement to conduct the foreclosure. "The fundamental rule as to the burden of proof is that whenever the existence of any fact is necessary in order that a party may make out his case, or establish a defense, the burden is on such party to show the existence of such fact." *Willet v. Rich*, 142 Mass. 356, 357, 7 N.E. 776, 777 (1886).

49.     The Massachusetts Supreme Judicial Court held that before a lender may foreclose, it must hold a valid assignment of the homeowner's mortgage. *U.S. Bank Nat'l Ass'n v. Ibanez*, 458 Mass. 637, 941 N.E.2d 40 (2011).

Date Filed 7/19/2023 10:01 AM
Superior Court - Suffolk
Docket Number

50.     Subsequently, the SJC also held that the lender, to be entitled to foreclose, must also be a holder of the note, or an authorized agent of one who holds the note. *Eaton v. Fannie Mae*, 462 Mass. 569, 969 N.E.2d 1118 (2012).

51.     In this matter, VRMTG and its servicer Newrez are not entitled to foreclose because they hold neither the Mortgage nor the Note.

52.     As stated above, a recorded power of attorney from Nationstar to Meridian was required for Assignment #4, executed by Meridian, to be valid. Notwithstanding this requirement, there was no such power attorney on record in the Suffolk Registry of Deeds. This renders Assignment #4 ineffective. At best, the Mortgage is held by the assignee of Assignment #3, Nationstar.

53.     There are therefore disputed legal issues as between Fustolo and the Defendants, in that Fustolo contends that the foregoing deprives the defendants of their right to foreclose, while the Defendants contend that foreclosure is valid in these circumstances.

## COUNT II:
## FDCPA, 15 U.S.C. §§ 1692, *et seq.*
## (Both Defendants)

54.     The preceding allegations are hereby incorporated by reference.

55.     Defendants are "debt collectors" as defined by the FDPCA.

56.     The Mortgage is a "debt" subject to the FDCPA.

57.     Defendants violated the FDCPA by, as stated above, committing unfair and unconscionable practices, making misrepresentations about the ownership of the Mortgage, and violating the requirement under 15 U.S.C. § 1692g that collection activity cease while a request for verification of the debt is pending, filing the Complaint the Foreclose while Fustolo's request for verification was pending.

58.     Fustolo was damaged as stated herein and incorporated by reference.

## COUNT III:
## Unfair Business Practices, G.L. c. 93A
## (Both Defendants)

59.     The preceding allegations are hereby incorporated by reference.

60.     Defendants are engaged in trade or commerce in Massachusetts by owning and servicing mortgages.

61.     On information and belief, defendant Newrez does not maintain a place of business in Massachusetts and/or does not keep assets in Massachusetts.

62.     On information and belief, defendant VRMTG does not maintain a place of business in Massachusetts and/or does not keep assets in Massachusetts.

63.     Unfair, deceptive, and misleading acts and practices in connection with debt collection are prohibited by regulations promulgated by the Massachusetts Attorney General, 940 C.M.R. §§ 7.00, *et seq.*, and 940 C.M.R. §§ 3.00, *et seq.*, the Massachusetts Division of Banks, 209 C.M.R. §§ 18.00, *et seq.*, the Massachusetts Debt Collection Act, G.L. c. 93, § 49, and the Consumer Protection Act, G.L. c. 93A.

64.     Defendants have violated G.L. c. 93A by committing unfair and deceptive acts and practices, and have likewise violated the statutes and regulations in the preceding paragraph, which are also *per se* violations of G.L. c. 93A.

65.     Fustolo was damaged as described above and as incorporated by reference.

66.     Accordingly, Defendants are liable to Fustolo for violation of G.L. c. 93A.

## COUNT IV:
### Defamation
### (Both Defendants)

67.     The preceding allegations are hereby incorporated by reference.

68.     Defendants made false statements about Fustolo, namely, that he owed Newrez and VRMTG payments under the Note and Mortgage, that the payments were in default, and that Freddie Mac was the party entitled to foreclose on and to sell the Property. These statements were untrue because (as detailed throughout the Complaint) Defendants are not entitled to enforce the Mortgage and Note against Fustolo.

69.     The statements were published to third parties in filings with the Suffolk Registry of Deeds and its users and viewers, the Land Court, and in a newspaper or newspapers of general circulation pursuant to the Land Court's Order of Notice.

70.     Defendants knew the statements were false, or acted negligently or recklessly in failing to determine whether the statements were true. Defendants' business routinely involves the documentation of title to assets supposedly belonging to them and there was no reason Defendants should not have been able to determine that they do not have the right to enforce the Mortgage and Note.

71.     The statements damaged Fustolo's described throughout this Complaint and incorporated by reference, including but not limited to economic harm, reputational harm, physical and emotional distress, mental anguish, and a decrease in the value of the Property due to the false statements that Defendants own a defaulted Mortgage and Note and are entitled to foreclose on the Property.

72.     In the alternative, the statement prejudiced Fustolo in his profession as a Certified Public Accountant by, inter alia, damaging his reputation by misrepresenting his financial

relationship with, and obligations to, the Defendants, also causing physical and emotional distress and mental anguish.

**COUNT V:**
**SLANDER OF TITLE/INJURIOUS FALSEHOOD**
**(Both Defendants)**

73.     The preceding allegations are hereby incorporated by reference.

74.     Defendants made false statements harmful to Fustolo's pecuniary interests in the Property, namely, that Defendants are entitled to enforce the Mortgage and Note, that Fustolo is in default under alleged obligations to Defendants under the Mortgage and Note, and that the Property is being foreclosed on and will be sold at auction. These statements were untrue because, as detailed throughout this Complaint, Defendants are not entitled to enforce the Mortgage and Note against Fustolo.

75.     Defendants knew the statements were false, or acted negligently or recklessly in failing to determine whether the statements were true.

76.     Defendants' statements caused Fustolo pecuniary damage as described throughout this Complaint, as well as in that these false statements have muddied Fustolo's title to the Property, deterring potential buyers of the Property, reducing the value of the Property, and generally encumbering the title of the Property with false or fraudulent filings in the Registry of Deeds, the Land Court, and in publications in newspapers of general circulation.

**REQUEST FOR RELIEF**

WHEREFORE, Fustolo respectfully request that the Honorable Court grant the following relief:

a)      Judgment in Fustolo's favor and against Defendants on all counts of the Complaint, including, without limitation, a declaration that Defendants are prohibited from foreclosing on the subject Property because they do not validly hold the Mortgage and Note;

b)      Actual damages, costs, interest, and attorney's fees;

c)      Treble damages pursuant to G.L. c. 93A; and

d)      Any other relief that they may be entitled to, at law or in equity.

**JURY TRIAL DEMAND**

Plaintiff hereby demand a trial by jury on all issues so triable.

Respectfully submitted,

Plaintiff,
Steven C. Fustolo
By counsel,

/s/ *Joe Dye Culik*
Joe Dye Culik (BBO #672665)
DYE CULIK PC
1200 E. Morehead St., Suite 260
Charlotte, NC 28204
(980) 999-3557
(980) 999-3537 (Fax)
jc@dyeculik.com

July 19, 2023

COMMONWEALTH OF MASSACHUSETTS
SUPERIOR COURT DEPARTMENT

SUFFOLK, SS.                                                    CASE NO.

STEVEN C. FUSTOLO

    *Plaintiff*

v.

NEWREZ LLC dba SHELLPOINT
MORTGAGE SERVICING and
U.S. BANK TRUST NATIONAL
ASSOCIATION, NOT IN ITS INDIVIDUAL
CAPACITY BUT SOLELY AS OWNER
TRUSTEE FOR VRMTG ASSET TRUST

    *Defendants*

**VERIFICATION OF COMPLAINT**

I, Steven C. Fustolo, depose and state that I am the plaintiff in this action, that I have read the foregoing Complaint, that no material facts have been omitted therefrom, and that the facts stated in it are true and correct based on my personal knowledge except as to matters therein stated to be alleged on information and belief and as to those matters I believe them to be true.

_____
Steven C. Fustolo

15

After Recording Return To:
Steven C. Fustolo
87 Terrace Hall Avenue
Burlington, Massachusetts 01830

2007 00138945

Bk: 42920 Pg: 260   Doc: UD
Page: 1 of 2   12/31/2007 01:38 PM

Attested hereto
*Francis M. Roache*
Francis M. Roache
Register of Deeds

# QUITCLAIM DEED

**115 Salem Street Realty, LLC**, a Massachusetts limited liability company having an address of 87 Terrace Hall Avenue, Burlington, MA 01830 in consideration of **One Dollar ($1.00 )** grant to **Steven C. Fustolo, Individually,** of **87 Terrace Hall Avenue, Burlington, Massachusetts.**

## with *QUITCLAIM COVENANTS*

**Unit Nos. 9, 10, 11, 12, 13, 14, 15, and 16 of 115 Salem Street Condominium (the "Condominium"), located at 115 Salem Street, Boston, Massachusetts, created pursuant to and subject to the provisions of Chapter 183A, of the General Laws of Massachusetts, by Master Deed dated April 1, 2004 and recorded with Suffolk County Registry of Deeds on April 14, 2004 in Book 34247, Page 253, as amended (hereinafter referred to as "Master Deed").**

**The Units are shown on Floor Plans of the Building referenced in and/or recorded with the Master Deed to which are affixed the verified statement of a registered architect, registered professional engineer or registered land surveyor.**

**The Units are conveyed together with the undivided percentage interest in the Condominium Common Areas and Facilities as defined and described in the Master Deed and the exclusive right to use those Common Areas and Facilities, the Limited Common Areas and the Exclusive Use Areas appurtenant to the Units as set forth in the Master Deed.**

**The Units are subject to and have the benefit of all rights, easements, agreements, interest and provisions contained in the Master Deed and the Condominium Trust and By-Laws recorded therewith, as any of the same may be amended from time to time pursuant to the provisions thereof, as well as the provisions of Chapter 183A of the Massachusetts General Laws as the same may be amended from time to time.**

**The Units are also conveyed with the benefit of easement reserved in a deed from Viola R. Pinanksi to Pasquale DeBonis et al dated October 23, 1948 and recorded with said Deeds in Book 6473, Page 294.**

**Being the same premises conveyed to 115 Salem Street Realty, LLC by deed dated September 5, 2003, recorded with the Suffolk Registry of Deeds in Book 32702, Page 253..**

EXHIBIT
1

**After Recording Return To:**
Steven C. Fustolo
87 Terrace Hall Avenue
Burlington, Massachusetts 01830

Executed as a sealed instrument this _15th_ day of **November, 2007.**

115 Salem Street Realty, LLC,

BY:  Property Trust Corporation, a Massachusetts
      Corporation, its Manager

_____
By Steven C. Fustolo, President

## COMMONWEALTH OF MASSACHUSETTS

On this _15th_ day of **November, 2007**, before me, the undersigned notary public, personally appeared **Steven C. Fustolo,** proved to me through satisfactory evidence of identification, which was Massachusetts drivers licenses, to be the persons whose names are signed on the preceding or attached document, and acknowledged to me that they signed it voluntarily and for its stated purpose.

_____
Notary Public:

My Commission Expires:

"Notary Public"
Michael J. Gill
Commonwealth of Massachusetts
My Commission Expires on Feb. 2, 2009

**Property Address:  115 Salem Street, Units 9, 10, 11, 12,13, 14, 15, 16, Boston, MA 02113**

After Recording Return To:
COUNTRYWIDE BANK, FSB
MS SV-79 DOCUMENT PROCESSING
P.O.Box 10423
Van Nuys, CA 91410-0423

**Attested hereto**
*Francis M. Roache*
Francis M. Roache
Register of Deeds

Prepared By:
ROGER MADDALENA



2008 00002250?
Bk: 42950 Pg: 276   Doc: MTG
Page: 1 of 15   01/09/2008 01:15 PM

----- [Space Above This Line For Recording Data] -----

0001882646930l008
[Doc ID #]

# MORTGAGE

MIN  1001337-0002867343-5

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated  JANUARY 07, 2008  , together with all Riders to this document.

**(B) "Borrower"** is
STEVEN C FUSTOLO

Borrower is the mortgagor under this Security Instrument.

**(C) "MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the mortgagee under this Security Instrument. MERS is** organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

**(D) "Lender"** is
COUNTRYWIDE BANK, FSB
Lender is a FED SVGS BANK
organized and existing under the laws of THE UNITED STATES
Lender's address is
1199 North Fairfax St. Ste.500, Alexandria, VA 22314

**(E) "Note"** means the promissory note signed by Borrower and dated  JANUARY 07, 2008  . The Note states that Borrower owes Lender
TWO HUNDRED TWENTY EIGHT THOUSAND SEVEN HUNDRED FIFTY and 00/100

Dollars (U.S. $ 228,750.00        ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than  FEBRUARY 01, 2038       .

**(F) "Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

**(G) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

**(H) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

- [ ] Adjustable Rate Rider
- [ ] Balloon Rider
- [ ] VA Rider
- [X] Condominium Rider
- [ ] Planned Unit Development Rider
- [ ] Biweekly Payment Rider
- [ ] Second Home Rider
- [X] 1-4 Family Rider
- [ ] Other(s) [specify]

**(I) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

**(J) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

MASSACHUSETTS–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
M Mortgage-MA
2006A-MA (06/07)(d/i)        Page 1 of 8        Form 3022 1/01







**EXHIBIT 2**

DOC ID #: 00018826469301008

**(K)** **"Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(L)** **"Escrow Items"** means those items that are described in Section 3.

**(M)** **"Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(N)** **"Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(O)** **"Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(P)** **"RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(Q)** **"Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

**TRANSFER OF RIGHTS IN THE PROPERTY**

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, with power of sale, the following described property located in the

| COUNTY | of | SUFFOLK | : |
[Type of Recording Jurisdiction]    [Name of Recording Jurisdiction]

SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.

Parcel ID Number: 0302370064                           which currently has the address of
115 SALEM ST APT 11, BOSTON
[Street/City]
Massachusetts 02113-1714  ("Property Address"):
[Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1.   **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will

M Mortgage-MA
2006A-MA (06/07)                                   Page 2 of 8                                Form 3022 1/01

DOC ID #: 0001882646930 1008

be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time



DOC ID #: 0001882646930100B

charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6.  **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7.  **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8.  **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9.  **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such

M Mortgage-MA
2006A-MA (08/07)



Page 4 of 8

Form 3022 1/01

DOC ID #: 0001882646930100B

interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

**(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.



DOC ID #: 0001882646930100B

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of

M Mortgage-MA
2006A-MA (06/07)



Page 8 of 8

Form 3022 1/01

DOC ID #: 0001882646930l008

the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

   20.  **Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

   Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

   21.  **Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

   Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

   Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

   NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:
   22.  '  **Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the STATUTORY POWER OF SALE and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

   If Lender invokes the STATUTORY POWER OF SALE, Lender shall mail a copy of a notice of sale to Borrower, and to other persons prescribed by Applicable Law, in the manner provided by Applicable Law. Lender shall publish the notice of sale, and the Property shall be sold in the manner prescribed by Applicable Law. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

   23.  **Release.** Upon payment of all sums secured by this Security Instrument, Lender shall discharge this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

M Mortgage-MA
2006A-MA (06/07)



Page 7 of 8

Form 3022 1/01

DOC ID #: 00018826469301008

24. **Waivers.** Borrower waives all rights of homestead exemption in the Property and relinquishes all rights of curtesy and dower in the Property.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____(Seal)
STEVEN C. FUSTOLO                           -Borrower

_____(Seal)
                                            -Borrower

_____(Seal)
                                            -Borrower

_____(Seal)
                                            -Borrower

COMMONWEALTH OF MASSACHUSETTS,          *Suffolk*      County ss:

On this _____ day of _____January, 2008_____, before me, the undersigned notary public, personally appeared _____STEVEN C. FUSTOLO_____

_____

_____

proved to me through satisfactory evidence of identification, which was/were _____drivers license_____, to be the person(s) whose name(s) is/are signed on the preceding document, and acknowledged to me that he/she/they signed it voluntarily for its stated purpose.
My Commission Expires:
(Seal)

"Notary Public"
Michael J. Gill
Commonwealth of Massachusetts
My Commission Expires on Feb. 20, 2009

_____
Notary Public

# 1-4 FAMILY RIDER
### (Assignment of Rents)

After Recording Return To:
COUNTRYWIDE BANK, FSB
MS SV-79 DOCUMENT PROCESSING
P.O.Box 10423
Van Nuys, CA 91410-0423


Prepared By:
ROGER MADDALENA


0001882646930 1008
[Doc ID #]

THIS 1-4 FAMILY RIDER is made this SEVENTH                day of JANUARY, 2008   ,
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or
Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure
Borrower's Note to
COUNTRYWIDE BANK, FSB

(the "Lender") of the same date and covering the Property described in the Security Instrument and located at:
115 SALEM ST APT 11
BOSTON, MA 02113-1714
[Property Address]

1-4 FAMILY COVENANTS. In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

MULTISTATE 1-4 FAMILY RIDER - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

VMP -57R (0401).01     CHL (06/04)(d)    Page 1 of 3                          Initials:_____
VMP Mortgage Solutions, Inc. (800)521-7291                      Form 3170 1/01






DOC ID #: 0001882646930100B

**A. ADDITIONAL PROPERTY SUBJECT TO THE SECURITY INSTRUMENT.** In addition to the Property described in the Security Instrument, the following items now or hereafter attached to the Property to the extent they are fixtures are added to the Property description, and shall also constitute the Property covered by the Security Instrument: building materials, appliances and goods of every nature whatsoever now or hereafter located in, on, or used, or intended to be used in connection with the Property, including, but not limited to, those for the purposes of supplying or distributing heating, cooling, electricity, gas, water, air and light, fire prevention and extinguishing apparatus, security and access control apparatus, plumbing, bath tubs, water heaters, water closets, sinks, ranges, stoves, refrigerators, dishwashers, disposals, washers, dryers, awnings, storm windows, storm doors, screens, blinds, shades, curtains and curtain rods, attached mirrors, cabinets, paneling and attached floor coverings, all of which, including replacements and additions thereto, shall be deemed to be and remain a part of the Property covered by the Security Instrument. All of the foregoing together with the Property described in the Security Instrument (or the leasehold estate if the Security Instrument is on a leasehold) are referred to in this 1-4 Family Rider and the Security Instrument as the "Property."

**B. USE OF PROPERTY; COMPLIANCE WITH LAW.** Borrower shall not seek, agree to or make a change in the use of the Property or its zoning classification, unless Lender has agreed in writing to the change. Borrower shall comply with all laws, ordinances, regulations and requirements of any governmental body applicable to the Property.

**C. SUBORDINATE LIENS.** Except as permitted by federal law, Borrower shall not allow any lien inferior to the Security Instrument to be perfected against the Property without Lender's prior written permission.

**D. RENT LOSS INSURANCE.** Borrower shall maintain insurance against rent loss in addition to the other hazards for which insurance is required by Section 5.

**E. "BORROWER'S RIGHT TO REINSTATE" DELETED.** Section 19 is deleted.

**F. BORROWER'S OCCUPANCY.** Unless Lender and Borrower otherwise agree in writing, Section 6 concerning Borrower's occupancy of the Property is deleted.

**G. ASSIGNMENT OF LEASES.** Upon Lender's request after default, Borrower shall assign to Lender all leases of the Property and all security deposits made in connection with leases of the Property. Upon the assignment, Lender shall have the right to modify, extend or terminate the existing leases and to execute new leases, in Lender's sole discretion. As used in this paragraph G, the word "lease" shall mean "sublease" if the Security Instrument is on a leasehold.

**H. ASSIGNMENT OF RENTS; APPOINTMENT OF RECEIVER; LENDER IN POSSESSION.** Borrower absolutely and unconditionally assigns and transfers to Lender all the rents and revenues ("Rents") of the Property, regardless of to whom the Rents of the Property are payable. Borrower authorizes Lender or Lender's agents to collect the Rents, and agrees that each tenant of the Property shall pay the Rents to Lender or Lender's agents. However, Borrower shall receive the Rents until: (i) Lender has given Borrower notice of default pursuant to Section 22 of the Security Instrument, and (ii) Lender has given notice to the tenant(s) that the Rents are to be paid to Lender or Lender's agent. This assignment of Rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of default to Borrower: (i) all Rents received by Borrower shall be held by Borrower as trustee for the benefit of Lender only, to be applied to the sums secured by the Security Instrument; (ii) Lender shall be entitled to collect and receive all of the Rents of the Property; (iii) Borrower agrees that each tenant of the Property shall pay all Rents due and unpaid to Lender or Lender's agents upon Lender's written demand to the tenant; (iv) unless applicable law provides otherwise, all Rents collected by Lender or Lender's agents shall be applied first to the costs of taking control of and managing the Property and collecting the Rents, including, but not limited to, attorneys' fees, receiver's fees, premiums on receiver's bonds, repair and

-57R (0401).01  CHL (06/04)                  Page 2 of 3

Initials:_____
Form 3170 1/01

DOC ID #: 0001882646930100B

maintenance costs, insurance premiums, taxes, assessments and other charges on the Property, and then to the sums secured by the Security Instrument; (v) Lender, Lender's agents or any judicially appointed receiver shall be liable to account for only those Rents actually received; and (vi) Lender shall be entitled to have a receiver appointed to take possession of and manage the Property and collect the Rents and profits derived from the Property without any showing as to the inadequacy of the Property as security.

If the Rents of the Property are not sufficient to cover the costs of taking control of and managing the Property and of collecting the Rents any funds expended by Lender for such purposes shall become indebtedness of Borrower to Lender secured by the Security Instrument pursuant to Section 9.

Borrower represents and warrants that Borrower has not executed any prior assignment of the Rents and has not performed, and will not perform, any act that would prevent Lender from exercising its rights under this paragraph.

Lender, or Lender's agents or a judicially appointed receiver, shall not be required to enter upon, take control of or maintain the Property before or after giving notice of default to Borrower. However, Lender, or Lender's agents or a judicially appointed receiver, may do so at any time when a default occurs. Any application of Rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of Rents of the Property shall terminate when all the sums secured by the Security Instrument are paid in full.

**I. CROSS-DEFAULT PROVISION.** Borrower's default or breach under any note or agreement in which Lender has an interest shall be a breach under the Security Instrument and Lender may invoke any of the remedies permitted by the Security Instrument.

**BY SIGNING BELOW,** Borrower accepts and agrees to the terms and provisions contained in this 1-4 Family Rider.

_____ (Seal)
STEVEN C. FUSTOLO                                - Borrower

_____ (Seal)
                                                 - Borrower

_____ (Seal)
                                                 - Borrower

_____ (Seal)
                                                 - Borrower

-57R (0401).01 CHL (06/04)          Page 3 of 3                    Form 3170 1/01



DOC ID #: 0001882646930100B

# CONDOMINIUM RIDER

THIS CONDOMINIUM RIDER is made this SEVENTH            day of
JANUARY, 2008      , and is incorporated into and shall be deemed to amend and supplement the
Mortgage, Deed of Trust, or Security Deed  (the "Security Instrument") of the same date given by the
undersigned (the "Borrower") to secure Borrower's Note to
COUNTRYWIDE BANK, FSB

(the "Lender") of the same date and covering the Property described in the Security Instrument and
located at:

115 SALEM ST APT 11, BOSTON, MA 02113-1714

[Property Address]

The Property includes a unit in, together with an undivided interest in the common elements of, a
condominium project known as:

115 SALEM STREET

[Name of Condominium Project]

(the "Condominium Project"). If the owners association or other entity which acts for the Condominium
Project (the "Owners Association") holds title to property for the benefit or use of its members or
shareholders, the Property also includes Borrower's interest in the Owners Association and the uses,
proceeds and benefits of Borrower's interest.

CONDOMINIUM COVENANTS. In addition to the covenants and agreements made in the
Security Instrument, Borrower and Lender further covenant and agree as follows:

A. Condominium Obligations. Borrower shall perform all of Borrower's obligations under the
Condominium Project's Constituent Documents. The "Constituent Documents" are the: (i) Declaration
or any other document which creates the Condominium Project; (ii) by-laws; (iii) code of regulations;
and (iv) other equivalent documents. Borrower shall promptly pay, when due, all dues and
assessments imposed pursuant to the Constituent Documents.

**MULTISTATE CONDOMINIUM RIDER**-Single Family-**Fannie Mae/Freddie Mac UNIFORM
INSTRUMENT**

Page 1 of 3

 -8R (0512)      CHL (12/05)(d)

VMP Mortgage Solutions, Inc.                    **Form 3140  1/01**





DOC ID #: 00018826469301008

**B. Property Insurance.** So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy on the Condominium Project which is satisfactory to Lender and which provides insurance coverage in the amounts (including deductible levels), for the periods, and against loss by fire, hazards included within the term "extended coverage," and any other hazards, including, but not limited to, earthquakes and floods, from which Lender requires insurance, then: (i) Lender waives the provision in Section 3 for the Periodic Payment to Lender of the yearly premium installments for property insurance on the Property; and (ii) Borrower's obligation under Section 5 to maintain property insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

What Lender requires as a condition of this waiver can change during the term of the loan.

Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, whether to the unit or to common elements, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender for application to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

**C. Public Liability Insurance.** Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

**D. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property, whether of the unit or of the common elements, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 11.

**E. Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the Condominium Project, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the Constituent Documents if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

**F. Remedies.** If Borrower does not pay condominium dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

 -8R (0512)    CHL (12/05)        Page 2 of 3                    Form 3140  1/01



DOC ID #: 00018826469301008

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Condominium Rider.

_____ (Seal)
STEVEN C. FUSTOLO                          - Borrower

_____ (Seal)
                                           - Borrower

_____ (Seal)
                                           - Borrower

_____ (Seal)
                                           - Borrower

File Number: 07-2398

## EXHIBIT "A"

## LEGAL DESCRIPTION

| | |
|---|---|
| Closing Date: | 1/07/2008 |
| Borrower(s): | Steven C. Fustolo |
| Property Address: | 115 Salem Street, Unit 11, Boston, MA 02113 |

**Unit No. 11 of 115 Salem Street Condominium (the "Condominium"), located at 115 Salem Street, Boston, Massachusetts, created pursuant to and subject to the provisions of Chapter 183A, of the General Laws of Massachusetts, by Master Deed dated April 1, 2004 and recorded with Suffolk County Registry of Deeds on April 14, 2004 in Book 34247, Page 253, as amended (hereinafter referred to as "Master Deed").**

**The Unit is shown on Floor Plans of the Building referenced in and/or recorded with the Master Deed to which are affixed the verified statement of a registered architect, registered professional engineer or registered land surveyor.**

**The Unit is conveyed together with the undivided percentage interest of 3.85% in the Condominium Common Areas and Facilities as defined and described in the Master Deed and the exclusive right to use those Common Areas and Facilities, the Limited Common Areas and the Exclusive Use Areas appurtenant to the Units as set forth in the Master Deed.**

**The Unit is subject to and have the benefit of all rights, easements, agreements, interest and provisions contained in the Master Deed and the Condominium Trust and By-Laws recorded therewith, as any of the same may be amended from time to time pursuant to the provisions thereof, as well as the provisions of Chapter 183A of the Massachusetts General Laws as the same may be amended from time to time.**

For grantor's title see deed dated 12/31/07 and recorded with the Suffolk County Registry of Deeds in Book 42920, Page 260.

Case 1:23-cv-11972-MDL1 Document 1-2 Filed 08/28/23 Page 34 of 59

 

Prepared by: ROGER MADDALENA

LOAN #: 188264693

# NOTE

JANUARY 07, 2008                BRAINTREE                MASSACHUSETTS
[Date]                              [City]                      [State]

115 SALEM ST APT 11, BOSTON, MA 02113-1714
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $228,750.00        (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is
COUNTRYWIDE BANK, FSB
I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of    6.875 %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

**(A) Time and Place of Payments**

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the  FIRST          day of each month beginning on  MARCH 01, 2008 . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on  FEBRUARY 01, 2038  , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at
P.O. Box 660694, Dallas, TX 75266-0694
or at a different place if required by the Note Holder.

**(B) Amount of Monthly Payments**

My monthly payment will be in the amount of U.S. $1,502.72 .

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

**(A) Late Charge for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of  FIFTEEN          calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be    3.000 % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

MULTISTATE FIXED RATE NOTE-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

Fixed Rate Note
2005N-XX (03/07)(d/i)            Page 1 of 2            Form 3200 1/01

  

Case 1:23-cv-11972-MJJ Document 1-2 Filed 08/29/23 Page 35 of 59

LOAN #: 188264693

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**7. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**8. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**9. WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

PAY TO THE ORDER OF

WITHOUT RECOURSE
COUNTRYWIDE BANK, FSB

BY

*Laurie Meder*
LAURIE MEDER
SENIOR VICE PRESIDENT

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
STEVEN C. FUSTOLO      -Borrower

_____ (Seal)
                       -Borrower

_____ (Seal)
                       -Borrower

_____ (Seal)
                       -Borrower

*[Sign Original Only]*

Fixed Rate Note
2005N-XX (03/07)

Form 3200 1/01

Attested hereto



Francis M. Roache
Register of Deeds

2011 00084719
Bk: 48825 Pg: 332    Doc: AST
Page: 1 of 1    11/08/2011 10:07 AM

This space for Recorder's use

DocID# 17118826469311317

Property Address:
115 Salem St Unit 11
Boston, MA 02113-1714
Property Location:
Township of N/A
MAG-AM 14517954    10/3/2011

Recording Requested By:
Bank of America
Prepared By:
Diana DeAvila
888-603-9011
450 E. Boundary St.
Chapin, SC 29036

When recorded mail to:
CoreLogic
450 E. Boundary St.
Attn: Release Dept.
Chapin, SC 29036

MIN #:  1001337-0002867343-5    MERS Phone #:  888-679-6377

## ASSIGNMENT OF MORTGAGE

For Value Received, the undersigned holder of a Mortgage (herein "Assignor") whose address is 3300 S.W. 34TH
AVENUE, SUITE 101 OCALA, FL 34474 does hereby grant, sell, assign, transfer and convey unto BANK OF
AMERICA, N.A., SUCCESSOR BY MERGER TO BAC HOME LOANS SERVICING, LP FKA
COUNTRYWIDE HOME LOANS SERVICING, LP whose address is 13150 WORLD GATE, HERNDON,
VA 20170 all beneficial interest under that certain Mortgage described below together with the note(s) and
obligations therein described and the money due and to become due thereon with interest and all rights accrued or
to accrue under said Mortgage.

Original Lender:          COUNTRYWIDE BANK, FSB
Original Borrower(s):     STEVEN C FUSTOLO
Date of Mortgage:        1/7/2008
Original Loan Amount:     $228,750.00

Recorded in Suffolk County, M A on: 1/9/2008, book 42950, page 276 and instrument number 2008 00002307

IN WITNESS WHEREOF, the undersigned has caused this Assignment of Mortgage to be executed on
10/5/11

MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS, INC.

By: _____

Christopher Herrera Assistant Secretary

State of California
County of Ventura

On 10-5-2011 before me, Norma Rojas, Notary Public, personally
appeared Christopher Herrera, who proved to me on the basis of satisfactory evidence to be
the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they
executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument
the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing
paragraph is true and correct.

WITNESS my hand and official seal.

_____
Notary Public                    (Seal)
My Commission Expires: _____

NORMA ROJAS
Commission # 1925862
Notary Public - California
Ventura County
My Comm. Expires Feb 14, 2015

EXHIBIT
3

2015 00034402
Bk: 54396 Pg: 339   Page: 1 of 1
Recorded: 05/01/2015 03:09 PM
ATTEST:Francis M. Roache, Register
Suffolk County Registry of Deeds

*This space for Recorder's use*

| | |
|---|---|
| DocID# 18118826469319603 | Recording Requested By:<br>Bank of America<br>Prepared By:<br>Giang Vu |
| Property Address:<br>115 Salem St Apt 11<br>Boston, MA 02113-1714<br>Property Location:<br>Township of BOSTON<br>MAG-AM  32430208  4/14/2015  FNN331A | 4909 Savarese Circle<br>Tampa, FL 33634 |

When recorded mail to:
CoreLogic
Mail Stop: ASGN
1 CoreLogic Drive
Westlake, TX 76262-9823

## ASSIGNMENT OF MORTGAGE

For Value Received, the undersigned holder of a Mortgage (herein "Assignor") whose address is 4909 SAVARESE CIRCLE, TAMPA, FL 33634 does hereby grant, sell, assign, transfer and convey unto **FEDERAL NATIONAL MORTGAGE ASSOCIATION** whose address is 14221 DALLAS PARKWAY SUITE 1000, DALLAS, TX 75254 all beneficial interest under that certain Mortgage described below together with the note(s) and obligations therein described and the money due and to become due thereon with interest and all rights accrued or to accrue under said Mortgage.

Beneficiary:          **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR COUNTRYWIDE BANK, FSB, ITS SUCCESSORS AND ASSIGNS**

Original Borrower(s):   **STEVEN C FUSTOLO**
Date of Mortgage:      1/7/2008
Original Loan Amount:   $228,750.00
Certificate of Title Number:   **ABSTRACT LAND**

Recorded in Suffolk County, MA on: 1/9/2008, book 42950, page 276 and instrument number 2008 00002307

**Contact Federal National Mortgage Association for this instrument c/o Seterus, Inc, 14523 SW Millikan Way #200, Beaverton, OR 97005, telephone 1-866-570-5277, which is responsible for receiving payments.**

IN WITNESS WHEREOF, the undersigned has caused this Assignment of Mortgage to be executed on
APR 17 2015

BANK OF AMERICA, N.A., SUCCESSOR BY MERGER
TO BAC HOME LOANS SERVICING, LP, FKA
COUNTRYWIDE HOME LOANS SERVICING LP

By: *Lisa Campbell Moore*
Lisa Campbell Moore, Vice President

State of FL, County of Hillsborough

The foregoing instrument was acknowledged before me this   APR 17 2015   , by Lisa Campbell Moore, Vice President of BANK OF AMERICA, N.A., SUCCESSOR BY MERGER TO BAC HOME LOANS SERVICING, LP, FKA COUNTRYWIDE HOME LOANS SERVICING LP, on behalf of the corporation. He/she is personally known to me or has produced _____ as identification.

Notary Public:   Martha Lucia Correa
My Commission Expires:   1/26/19

Martha Lucia Correa
NOTARY PUBLIC
STATE OF FLORIDA
Comm# FF192644
Expires 1/26/2019

EXHIBIT
4

# Suffolk County Registry of Deeds

# Electronically Recorded Document

### This is the first page of the document - Do not remove

## Recording Information

| | |
|---|---|
| Document Number | : 7132 |
| Document Type | : AST |
| Recorded Date | : January 28, 2020 |
| Recorded Time | : 10:03:30 AM |
| | |
| Recorded Book and Page | : 62452 / 139 |
| Number of Pages(including cover sheet) | : 3 |
| Receipt Number | : 804675 |
| Recording Fee | : $105.00 |

**EXHIBIT 5**

**Suffolk County Registry of Deeds**
**Stephen J. Murphy, Register**
**24 New Chardon Street**
**Boston, MA 02114**
**617-788-8575**
**Suffolkdeeds.com**

Date Filed 7/19/2023 10:01 AM
Superior Court - Suffolk
Docket Number

Case 1:23-cv-11972-MJJ   Document 1-2   Filed 08/28/23   Page 39 of 59
Bk: 62452 Pg: 140
Total Pages:    2

## CORPORATE ASSIGNMENT OF MORTGAGE

**Suffolk, Massachusetts**
**SELLER'S SERVICING #:******0923 "FUSTOLO"**

Date of Assignment: November 27th, 2019
Assignor: FEDERAL NATIONAL MORTGAGE ASSOCIATION, BY NATIONSTAR MORTGAGE
LLC, ITS ATTORNEY-IN-FACT at 8950 CYPRESS WATERS BLVD, COPPELL, TX 75019
Assignee: NATIONSTAR MORTGAGE LLC D/B/A MR. COOPER at 8950 CYPRESS WATERS
BLVD., COPPELL, TX 75019

Executed By: STEVEN C FUSTOLO To: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS,
INC., AS NOMINEE FOR COUNTRYWIDE BANK, FSB, ITS SUCCESSORS AND ASSIGNS
Date of Mortgage: 01/07/2008 Recorded: 01/09/2008 in Book/Reel/Liber: 42950 Page/Folio: 276 as
Instrument No.: 2008 00002307 In the County of Suffolk, State of Massachusetts.

Property Address: 115 SALEM ST APT 11, BOSTON, MA 02113-1714

   KNOW ALL MEN BY THESE PRESENTS, that for good and valuable consideration, the receipt and
sufficiency of which is hereby acknowledged, the said Assignor hereby assigns unto the above-named
Assignee, the said Mortgage having an original principal sum of $228,750.00 with interest, secured
thereby, and the full benefit of all the powers and of all the covenants and provisos therein contained, and
the said Assignor hereby grants and conveys unto the said Assignee, the Assignor's interest under the
Mortgage.

   TO HAVE AND TO HOLD the said Mortgage, and the said property unto the said Assignee forever,
subject to the terms contained in said Mortgage.

   FEDERAL NATIONAL MORTGAGE ASSOCIATION, BY NATIONSTAR MORTGAGE LLC, ITS
ATTORNEY-IN-FACT
On November 27th, 2019

By:_____
   MOHAMED S. HAMEED, Vice-President

Property Address:
115 SALEM ST APT 11
BOSTON, MA 02113-1714

*VC3*VC3NATT*11/27/2019 09:56:32 AM* NATT01NATTA000000000000002307031* MABUFFO* *******0923 MASTATE_MORT_ASSIGN_ASSN **DKSNATT*

Recording Requested By:
NATIONSTAR MORTGAGE DBA MR. COOPER
When Recorded Return To:
DOCUMENT ADMINISTRATION
NATIONSTAR MORTGAGE DBA MR. COOPER
8950 CYPRESS WATERS BLVD
COPPELL, TX 75019

CORPORATE ASSIGNMENT OF MORTGAGE Page 2 of 2
STATE OF Texas
COUNTY OF Dallas

On November 27th, 2019, before me, SYLVIA RAMIREZ, a Notary Public in and for Dallas in the State of Texas, personally appeared MOHAMED S. HAMEED, Vice-President, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that by his/her/their signature on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal,

SYLVIA RAMIREZ
Notary Public, State of Texas
Comm. Expires 03-07-2023
Notary ID 131921660

SYLVIA RAMIREZ
Notary Expires: 03/07/2023  #131921660

(This area for notarial seal)

*VC3*VC3NATT*11/27/2019 09:56:32 AM* NATT01NATTA000000000000002307031* MASUFFO* *****0923 MASTATE_MORT_ASSIGN_ASSN **DK9NATT*

# Suffolk County Registry of Deeds

# Electronically Recorded Document

## This is the first page of the document - Do not remove

### Recording Information

| | |
|---|---|
| Document Number | : 136588 |
| Document Type | : AST |
| Recorded Date | : December 16, 2021 |
| Recorded Time | : 03:11:03 PM |
| | |
| Recorded Book and Page | : 66871 / 345 |
| Number of Pages(including cover sheet) | : 3 |
| Receipt Number | : 944293 |
| Recording Fee | : $105.00 |

**Suffolk County Registry of Deeds**
**Stephen J. Murphy, Register**
**24 New Chardon Street**
**Boston, MA 02114**
**617-788-8575**
**Suffolkdeeds.com**


EXHIBIT
6

Prepared By and Return To:
**Karine Sharma**
Collateral Department
Meridian Asset Services, LLC
3201 34th Street South, Suite 310
St. Petersburg, FL 33711
(239) 351-2442

Space above for Recorder's use

Loan No: 4045298

15307427

## ASSIGNMENT OF MORTGAGE

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned, **NATIONSTAR MORTGAGE LLC D/B/A MR. COOPER**, whose address is 8950 CYPRESS WATERS BLVD., COPPELL, TX 75019, (ASSIGNOR), does hereby grant, assign and transfer to **US BANK TRUST NATIONAL ASSOCIATION, NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS OWNER TRUSTEE FOR VRMTG ASSET TRUST**, whose address is 888 SEVENTH AVENUE 10TH FLOOR, NEW YORK, NY 10019, (ASSIGNEE), its successors, transferees and assigns forever, all beneficial interest under that certain mortgage, together with the certain note(s) described therein with all interest, all liens, and any rights due or to become due thereon.

Date of Mortgage: 1/7/2008
Original Loan Amount: $228,750.00
Executed by (Borrower(s)): STEVEN C. FUSTOLO
Original Lender: **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS MORTGAGEE, AS NOMINEE FOR COUNTRYWIDE BANK, FSB, ITS SUCCESSORS AND ASSIGNS**
Filed of Record: In Mortgage Book/Liber/Volume 42950, Page 276
Document/Instrument No: 2008 00002307 in the Recording District of Suffolk, MA, Recorded on 1/9/2008.


Property more commonly described as: 115 SALEM ST APT 11, BOSTON, MASSACHUSETTS 02113-1714

IN WITNESS WHEREOF, the undersigned by its duly elected officers and pursuant to proper authority of its board of directors has duly executed, sealed, acknowledged and delivered this assignment.

Date: 11/29/2021

**NATIONSTAR MORTGAGE LLC D/B/A MR. COOPER, BY MERIDIAN ASSET SERVICES, LLC, ITS ATTORNEY-IN-FACT**



By: **MARK THOMAS WATERMAN**

Witness Name: **PAMELA SMITH-BRONSON**

Title: **VICE PRESIDENT**

POA BATCH #12427
POA WAS RECORDED ESSEX SOUTH COUNTY, MA
ON 11/15/2021 /INST: 48 /BK: 40480 /PG: 375


4045298 FNMA NPL 2021-1 15307427

> A NOTARY PUBLIC OR OTHER OFFICER COMPLETING THIS CERTIFICATE VERIFIES ONLY THE IDENTITY OF
> THE INDIVIDUAL WHO SIGNED THE DOCUMENT TO WHICH THIS CERTIFICATE IS ATTACHED, AND NOT THE
> TRUTHFULNESS, ACCURACY, OR VALIDITY OF THAT DOCUMENT

State of          **FLORIDA**
County of        **PINELLAS**

On 11/29/2021, before me, JEFF G. JORDAN, a Notary Public, personally appeared **MARK THOMAS
WATERMAN, VICE PRESIDENT of/for MERIDIAN ASSET SERVICES, LLC, AS ATTORNEY-IN-FACT
FOR NATIONSTAR MORTGAGE LLC D/B/A MR. COOPER,** personally known to me, or who proved to me
on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument
and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by
his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted,
executed the instrument. I certify under PENALTY OF PERJURY under the laws of the State of **FLORIDA** that
the foregoing paragraph is true and correct. I further certify the foregoing instrument was acknowledged before me
by means of ☑ physical presence or ☐ online notarization and that MARK THOMAS WATERMAN, signed,
sealed, attested and delivered this document as a voluntary act in my presence.

Witness my hand and official seal.

(Notary Name): **JEFF G. JORDAN**
My commission expires: 02/26/2024

Jeff G. Jordan
NOTARY PUBLIC
STATE OF FLORIDA
Comm# GG962762
Expires 2/26/2024

4045298 FNMA NPL 2021-1 15307427

# BENDETT & McHUGH, P.C.
## ATTORNEYS AT LAW

November 11, 2022

Bendett & McHugh, P.C.
270 Farmington Ave., Suite 151
Farmington, CT 06492
1-800-626-5441 from 8am to 5pm EST, Monday to Friday
https://www.bmpc-law.com/

To:  Steven C. Fustolo
110 Church Street
Winchester, MA 01890

**Reference:** 0674042536

**Bendett & McHugh, P.C. is a debt collector.** We are trying to collect a debt that you owe* US Bank Trust National Association, Not In Its Individual Capacity But Solely As Owner Trustee For VRMTG Asset Trust. We will use any information you give us to help collect the debt.

### Our information shows:

You have a mortgage loan with account number 0674042536.

**Total amount of the debt now:**   **$375,981.41**

Attached you will find the last monthly periodic statement that you were provided on 10/18/2022 which provides details of this debt.

### How can you dispute the debt?

- **Call or write to us by 12/23/2022, to dispute all or part of the debt.** If you do not, we will assume that our information is correct.
- **If you write to us by 12/23/2022,** we must stop collection on any amount you dispute until we send you information that shows you owe the debt. You may use the form below or write to us without the form. You may also include supporting documents. We accept disputes electronically via email at Validation@bmpc-law.com.

### What else can you do?

- **Write to ask for the name and address of the original creditor,** if different from the current creditor. If you write by 12/23/2022, we must stop collection until we send you that information. You may use the form below or write to us without the form. We accept disputes electronically via email at Validation@bmpc-law.com.
- Go to www.cfpb.gov/debt-collection to learn more about your rights under federal law. For instance, you have the right to stop or limit how we contact you.
- Contact us if you wish to reinstate or payoff this loan on a date certain or to discuss other repayment options.
- Póngase en contacto con nosotros para solicitor una copia de este formulario en español.

**Notice:** See enclosure for important information

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**Mail this form to:**
Bendett & McHugh, P.C.
Attn: Validation Department
270 Farmington Ave., Suite 151
Farmington, CT 06032

5732FC-202219502
Steven C. Fustolo
115 Salem St Apt 11, Boston, MA 02113

### How do you want to respond?
*Check all that apply:*

- ☐ **I want to dispute the debt because I think:**
  - ☐ This is not my debt.
  - ☐ The amount is wrong.
  - ☐ Other (please describe on reverse or attach additional information).
- ☐ **I want you to send me the name and address of the original creditor.**
- ☐ Quiero este formulario en español.

**EXHIBIT 7**

# BENDETT & McHUGH, P.C.
## ATTORNEYS AT LAW

**NOTICE:** This law firm is a debt collector and is attempting to collect a debt. Any information will be used for that purpose. Please note, however, that if you have previously received a discharge in bankruptcy which discharged this debt or the collection of the debt is prohibited by the automatic bankruptcy stay, this law firm is not attempting to collect a debt, but is only enforcing a lien against the subject property.

**\*PLEASE ALSO NOTE:** If you are not personally obligated to pay this debt but are a mortgagor due to your ownership interest in the subject real property, you are receiving this notice for informational purposes only and you are neither obligated to pay the debt nor entitled to dispute the same. If this describes you, this law firm is not attempting to collect a debt from you, but is only enforcing a lien against the subject property.

**NOTICE REGARDING DEBT VALIDATION:**   The fact that you have the time specified above to indicate a dispute will not prevent us from filing suit or initiating/advancing foreclosure efforts in the manner prescribed by local law within that time prior to a timely, written dispute to the debt or any portion thereof or request for the name and address of the original creditor if different from the current creditor.

If a suit is commenced during the validation period specified above, this notice does not affect your dealing with the court, and in particular it does not change the time by which you must answer the complaint, if one is filed.  The summons that will be served with the complaint if a suit is commenced is a command from the court, not from us, and you must follow its instructions even if you dispute the validity or amount of the debt.  The notice in this letter also does not affect our relations with the court.  As lawyers, we may file papers in the suit according to the court's rules and the judge's instructions.

**THE FAILURE OF A CONSUMER TO DISPUTE THE VALIDITY OF A DEBT MAY NOT BE CONSTRUED BY ANY COURT AS AN ADMISSION OF LIABILITY BY THE CONSUMER.**

270 Farmington Avenue, Suite 151 •Farmington, Connecticut 06032 • Fax (860) 760-6952
Tel (860) 677-2868 TDD/TYY PLEASE FIRST DIAL 711

# shellpoint
A DIVISION OF NEWREZ

# MORTGAGE STATEMENT

Statement Date: 10/18/2022

| | |
|---|---|
| Account Number | 0674042536 |
| Payment Date | 11/01/2022 |
| **Payment Amount** | **$48,928.20** |

Phone:      800-365-7107
Website:    www.shellpointmtg.com

## Explanation of Payment Amount

| | |
|---|---|
| Principal | $323.05 |
| Interest | $882.26 |
| Escrow (Taxes and Insurance) | $334.58 |
| **Regular Monthly Payment** | **$1,539.89** |
| Total Fees and Charges | $15.00 |
| Past Unpaid Payment | $47,373.31 |
| **Total Payment Amount** | **$48,928.20** |

## Past Payments Breakdown

| | Paid Last Month | Paid Year to Date |
|---|---|---|
| Principal | $0.00 | $0.00 |
| Interest | $0.00 | $0.00 |
| Escrow | $0.00 | $0.00 |
| Fees/Late Charges | $0.00 | $0.00 |
| **Total** | **$0.00** | **$0.00** |

## Account Information

| | |
|---|---|
| Outstanding Principal | $291,266.78 |
| Deferred Balance* | $45,558.79 |
| Interest Rate | 3.7500% |
| Prepayment Penalty | None |
| Property Address: | 115 SALEM ST APT 11 |
| | BOSTON MA 02113 |

DO NOT SEND MAIL OR PAYMENTS TO THIS ADDRESS
P.O. Box 619063 • Dallas, TX 75261-9063

8-811-22800-0003884-001-000-010-000-000

STEVEN C FUSTOLO
110 CHURCH ST
WINCHESTER MA  01890-3521

## Bankruptcy Message

Our records show that either you are a debtor in bankruptcy or you discharged personal liability for your mortgage loan in bankruptcy.

We are sending this statement to you for informational and compliance purposes only. It is not an attempt to collect a debt against you.

If you want to stop receiving statements, write to us.

## Important Messages

*Partial Payments: Any partial payments listed here are not applied to your mortgage, but instead are held in one or more separate suspense accounts. Once we receive funds equal to a full monthly payment, we will apply those funds to your mortgage.

## Additional Messages

**Affected by COVID-19?** Assistance may be available. We offer relief options, such as a forbearance - a temporary suspension of payments, and payment deferment. Visit our website www.shellpointmtg.com or call us at 866-825-2174 to see if you qualify.

For questions regarding the servicing of your loan, please contact us at 800-365-7107 Monday-Friday 8:00AM-9:00PM, and Saturday 10:00AM-2:00PM. Under federal law, requires us to tell you how your collect, share, and protect your

## **Account History**

Recent Account History
o Payment due 05/01/22:    unpaid balance of $39,393.31
o Payment due 06/01/22:    unpaid balance of $1,599.00
o Payment due 07/01/22:    unpaid balance of $1,599.00
o Payment due 08/01/22:    unpaid balance of $1,599.00
o Payment due 09/01/22:    unpaid balance of $1,599.00
o Payment due 10/01/22:    unpaid balance of $1,599.00
o Payment due 11/01/22:    current payment due

ACCOUNT Number   007404200

## Transaction Activity (09/17/2022 - 10/17/2022)

| Date | Description | Charges | Payments |
|---|---|---|---|
| 10/07/2022 | Lender Placed Hazard Disbursement | $287.12 | $0.00 |
| 10/13/2022 | City Tax Bill 2 | $998.91 | $0.00 |
| 10/17/2022 | Property Inspection Disbursement | $15.00 | $0.00 |

**Important Notice:** Newrez LLC dba Shellpoint Mortgage Servicing is a debt collector. This is not an attempt to collect a debt due to your bankruptcy filing. Newrez LLC dba Shellpoint Mortgage Servicing's NMLS ID is 3013.

**Important Notice:** Please be advised that post-petition fees, expenses or charges reflected on this statement might be subject to additional disclosure to the bankruptcy court under Rule 3002.1 of the Federal Rules of Bankruptcy Procedure. In the event such post-petition fees, expenses or charges are disallowed by the bankruptcy court, a subsequent waiver will be applied to your account.

**Notice of Error or Information Request Address**
You have certain rights under Federal law related to resolving errors in the servicing of your loan and requesting information about your loan. If you want to request information about your loan or if you believe an error has occurred in the servicing of your loan and would like to submit an Error Resolution or Informational Request, please write to us at the following address:

Shellpoint Mortgage Servicing
P.O. Box 10826
Greenville, SC 29603

**Housing Counselor Information:** If you would like counseling or assistance, you can contact the following:
U.S. Department of Housing and Urban Development (HUD): For a list of homeownership counselors or counseling organizations in your area, go to http://www.hud.gov/offices/hsg/sfh/hcc/hcs.cfm or call 800-569-4287.

**¿Hablas español?** Esta carta contiene información importante sobre su préstamo hipotecario. Si usted no entiende el contenido de esta carta, por favor contacte a uno de nuestros representantes que hablan español al número **800-365-7107**

If you prefer to receive communication in a language other than English, please contact us at 800-365-7107 to speak with a translator in your preferred language about the servicing of your loan or a document you received.

A successor in interest is someone who acquires an ownership interest in a property secured by a mortgage loan by transfer upon the death of a relative, as a result of a divorce or legal separation, through certain trusts, between spouses, from a parent to a child, or when a borrower who is a joint tenant or tenant by the entirety dies. If you are a successor in interest, or you think you might be, please contact by phone, mail or email to start the confirmation process.

Please be advised that Shellpoint Mortgage Servicing utilizes third-party providers in connection with the servicing of your loan, but Shellpoint Mortgage Servicing remains responsible for all actions taken by third-party providers.

The deferred amount is due on your last mortgage payment date or earlier if you sell your home, refinance, or otherwise pay off your loan.

Repayment options may be available to you. **Call 800-365-7107** to discuss payment arrangements. Failure to act on this matter may result in us exercising our legal rights as permitted by the contract and applicable law.

 **DYE CULIK** PC

1200 E. MOREHEAD ST.
SUITE 260
CHARLOTTE, NC 28204

P 980.999.3557
F 980.999.3537

DYECULIK.COM

December 13, 2022

VIA EMAIL ONLY validation@bmpc-law.com

Bendett & McHugh, PC
270 Farmington Ave., Suite 151
Farmington, CT 06492

**RE:     Steven C. Fustolo, 115 Salem St., Apt. 11, Boston, MA 02113**

Dear Sir or Madam:

Please be advised that this office represents Steven C. Fustolo regarding the above-referenced account. I am in receipt of your notice to Mr. Fustolo of his right to request verification of the debt.

Accordingly, I request verification of the debt pursuant to the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, et seq., and pursuant the debt-collection regulations under to the Code Massachusetts Regulations, 209 C.M.R. § 18.18 and 940 C.M.R. 7.08.

Therefore, as you are required to do by law, please provide all papers or copies of papers in your possession which bear my client's signature and which concern the debt being collected, as well as any ledger, account card, or similar record in your possession which reflects the date and amount of payments, credits, and charges concerning the alleged debt.

Please include the following information:

- Account history;
- All mortgages and assignments;
- All promissory notes, indorsements, and alonges;
- All notices sent pursuant to Paragraph 22 of Mr. Fustolo's mortgage;



EXHIBIT

8

- All notices sent pursuant to G.L. c. 244, §§ 35A and 35B;
- All affidavits in connection with G.L. c. 244, §§ 35B and 35C; and
- All other affidavits prepared in connection with the mortgage, assignments, or foreclosures;
- All powers of attorney authorizing any third party to act on behalf of the alleged creditor.

I also demand that you cease contact with my client and instead direct all correspondence to my office.

Sincerely,

Joe Culik

Joe Dye Culik
Attorney at Law
Direct: (980) 999-3357
jc@dyeculik.com


cc:     Steven C. Fustolo

Date Filed 7/19/2023 10:01 AM
Superior Court - Suffolk
Docket Number

Case 1:23-cv-11972-MJJ   Document 1-2   Filed 08/28/23   Page 50 of 59

Date Filed: 12/16/2022 11:34 AM
Land Court
Docket Number:

LET JUDGMENT ISSUE:

_____
Date

_____
Gordon H. Piper, Chief Justice

# COMMONWEALTH OF MASSACHUSETTS
## LAND COURT
## DEPARTMENT OF THE TRIAL COURT

SUFFOLK, ss.

US BANK TRUST NATIONAL ASSOCIATION, NOT IN ITS INDIVIDUAL CAPACITY BUT
SOLELY AS OWNER TRUSTEE FOR VRMTG ASSET TRUST

      Plaintiff

    v.

STEVEN C. FUSTOLO

      Defendant

**COMPLAINT TO DETERMINE
MILITARY STATUS**

1.    Your Plaintiff has an interest in a mortgage with the statutory power of sale given by Steven C. Fustolo to Mortgage Electronic Registration Systems, Inc., as nominee for Countrywide Bank, FSB dated January 7, 2008, recorded or filed in Suffolk County Registry of Deeds in Book 42950, Page 276, covering 115 Salem Street, Unit 11 of the 115 Salem Street Condominium, Boston and more particularly described in said mortgage.

2.    No Defendant is in the military service within the meaning of the Servicemembers Civil Relief Act, 50 U.S.C. c. 50 § 3901 *(et seq)*.

3.    The Plaintiff alleges on information and belief that the Defendant is the only person holding the equity of redemption of the property covered by the mortgage described in Paragraph 1 of this Complaint so far as appears of record in the said Registry of Deeds and as known to your plaintiff.

4.    The holder of the mortgage seeks to proceed with the foreclosure of said mortgage described in Paragraph 1 to protect its interest as secured thereby for breach of the conditions thereof and desires to comply with the provisions of the Servicemembers Civil Relief Act.

Wherefore your plaintiff prays:

1.    For an order of notice ordering the defendant to appear and answer this complaint if defendant is now, or recently has been, in the active military service and claim the benefits of the Servicemembers Civil Relief Act.

2.    For a judgment declaring that the Defendant is not entitled to the benefits of the Servicemembers Civil Relief Act.

*/S/ Devin Graham*
Devin Graham, BBO No. 695110
Ashley A. Torres, BBO No. 690422
Date: December 16, 2022

**EXHIBIT
9**

From the Office of:

BENDETT & MCHUGH, PC

270 FARMINGTON AVENUE, STE. 151

FARMINGTON, CT 06032

Telephone:  (860) 677-2868

dgraham@bmpc-law.com

atorres@bmpc-law.com

---

## LAND COURT USE ONLY

Under the provisions of the Servicemembers Civil Relief Act, this cause came on to be heard and thereupon, upon consideration thereof, it appearing to the Court that the Defendant is not entitled to the benefits of said Act, it is hereby

**ORDERED** and **ADJUDGED** that the Defendant is not entitled to the benefits of the Servicemembers Civil Relief Act, as of_____ , the date of the allowance of Plaintiff's motion for judgment.


By the Court ().

Attest:


**(SEAL)**                                         Deborah J. Patterson
                                                   Recorder

## Joe Dye Culik

| | |
|---|---|
| **From:** | Joe Dye Culik |
| **Sent:** | Tuesday, December 20, 2022 6:00 PM |
| **To:** | dgraham@bmpc-law.com; atorres@bmpc-law.com |
| **Cc:** | validation@bmpc-law.com |
| **Subject:** | RE: Fustolo, 115 Salem St., Unit 11, Boston, MA |
| **Attachments:** | 221213_Validation Ltr B&M 11 (Fustolo).pdf; 221220_QWR to Shellpoint (Fustolo).pdf |

Devin and Ashley,

My office represents Steven Fustolo regarding the above-referenced property. I have two issues that I am writing you about, below.

1. **Filing the SCRA complaint before providing debt validation** –On December 13, 2022, I sent the below-referenced validation letter to Bendett & McHugh (copy attached). Under the Fair Debt Collection Practices Act, all collection must cease until verification of the debt is provided. However, it appears that Bendett & McHugh filed the SCRA complaint three days later, on December 16, in violation of applicable law. I respectfully request that you dismiss the SCRA complaint until you provide verification.

2. **Qualified written request** – Today my office sent the attached qualified written request to Shellpoint. A copy is attached for your records.

Please feel free to reach out to me with any questions.

Thank you,

**Joe Dye Culik**
Attorney + Partner
Ⓓ 980 999 3357

 **DYE CULIK** PC

1200 E. Morehead St., Suite 260
Charlotte, North Carolina 28204
Ⓟ 980 999 3557 | Ⓕ 980 999 3537
dyeculik.com

---

**From:** Joe Dye Culik
**Sent:** Tuesday, December 13, 2022 1:29 PM
**To:** 'validation@bmpc-law.com' <validation@bmpc-law.com>
**Subject:** Fustolo, 115 Salem St., Unit 11, Boston, MA

**EXHIBIT 10**

Sir or Madam:

Please see the attached validation letter related to my above-referenced client, Steven Fustolo.

Regards,

**Joe Dye Culik**
Attorney + Partner
Ⓓ 980 999 3357

 **DYE CULIK** PC

1200 E. Morehead St., Suite 260
Charlotte, North Carolina 28204
P 980 999 3557 | F 980 999 3537
dyeculik com

## Joe Dye Culik

| | |
|---|---|
| **From:** | Ashley Torres <atorres@bmpc-law.com> |
| **Sent:** | Wednesday, December 21, 2022 9:25 AM |
| **To:** | Joe Dye Culik |
| **Cc:** | Validation; Erika Vogel; Lisa Libera; Kim Caplik; Amber Murkowicz |
| **Subject:** | RE: Fustolo, 115 Salem St., Unit 11, Boston, MA |

[External]

Good Morning Joe,

My apologies – it seems the SCRA complaint was filed in error. We will be dismissing the action and will provide a filed copy of the dismissal when available.

Thank you,
Ashley

**BENDETT & McHUGH, P.C.**
**ATTORNEYS AT LAW**

Connecticut * Maine * Massachusetts
New Hampshire * Rhode Island * Vermont

**Ashley Torres, Esq.**
(she, her, hers)
**Managing Foreclosure Attorney –**
**Massachusetts & Rhode Island**
Bendett & McHugh, P.C.
270 Farmington Avenue, Suite 151
Farmington, CT 06032
Phone: (860) 606-1036
Cell: (860) 558-4308
Email: atorres@bmpc-law.com
*Admitted in MA, RI, & CT
*United States District Court for the
District of Rhode Island

---

**From:** Joe Dye Culik <jc@dyeculik.com>
**Sent:** Tuesday, December 20, 2022 6:00 PM
**To:** Devin Graham <dgraham@bmpc-law.com>; Ashley Torres <atorres@bmpc-law.com>
**Cc:** Validation <validation@bmpc-law.com>
**Subject:** RE: Fustolo, 115 Salem St., Unit 11, Boston, MA

EXHIBIT
**11**

Devin and Ashley,

My office represents Steven Fustolo regarding the above-referenced property. I have two issues that I am writing you about, below.

1. **Filing the SCRA complaint before providing debt validation** –On December 13, 2022, I sent the below-referenced validation letter to Bendett & McHugh (copy attached). Under the Fair Debt Collection Practices Act, all collection must cease until verification of the debt is provided. However, it appears that Bendett & McHugh filed the SCRA complaint three days later, on December 16, in violation of applicable law. I respectfully request that you dismiss the SCRA complaint until you provide verification.

2. **Qualified written request** – Today my office sent the attached qualified written request to Shellpoint. A copy is attached for your records.

Please feel free to reach out to me with any questions.

Thank you,

**Joe Dye Culik**
Attorney + Partner
D 980 999 3357

 **DYE CULIK** PC

1200 E. Morehead St., Suite 260
Charlotte, North Carolina 28204
P 980 999 3557 | F 980 999 3537
dyeculik.com

**From:** Joe Dye Culik
**Sent:** Tuesday, December 13, 2022 1:29 PM
**To:** 'validation@bmpc-law.com' <validation@bmpc-law.com>
**Subject:** Fustolo, 115 Salem St., Unit 11, Boston, MA

Sir or Madam:

Please see the attached validation letter related to my above-referenced client, Steven Fustolo.

Regards,

**Joe Dye Culik**
Attorney + Partner
D 980 999 3357

 **DYE CULIK** PC

1200 E. Morehead St., Suite 260
Charlotte, North Carolina 28204
P 980 999 3557 | F 980 999 3537
dyeculik.com

WARNING: Due to increased fraud, if you receive wire transfer instructions call us immediately to verify *before* sending funds.
NOTICE: This email is privileged and confidential. Do not read, copy, or disseminate unless you are the intended addressee. If you
have received it in error, notify the sender. Email may not be secure and may be illegally intercepted. You are not a client of this firm
and reliance on anything this email is at your own risk, unless you have a signed fee agreement.

CAUTION: This email originated from outside of the organization. Do not click links or open attachments
unless you recognize the sender and know the content is safe.
This law firm is a debt collector and is attempting to collect a debt. If this communication relates to a debt owed to one
of our clients, any information obtained will be used for that purpose. Please note, however, that if you have previously
received a discharge in bankruptcy, this law firm is not attempting to collect a debt, but is only enforcing a lien against
the subject property. CONFIDENTIALITY NOTICE: This e-mail transmission (including attachments, if any) contains
information from the law firm of Bendett & McHugh, P.C. and is intended solely for the use of the individual or entity to
which this transmission is addressed. This communication is intended to be and to remain confidential and may be
subject to applicable attorney/client and/or work product privileges. Any review, use, disclosure, distribution or copying
of this e-mail is prohibited except by or on behalf of the intended recipient. If you received this email in error and are
not the intended recipient, please notify me immediately by reply e-mail, delete this e-mail, and do not disclose its

contents to anyone. TO OPT OUT OF FUTURE EMAIL COMMUNICATIONS REGARDING THIS DEBT, YOU MAY REPLY TO THIS EMAIL WITH THE WORD "STOP".

Date Filed 7/19/2023 10:01 AM
Superior Court - Suffolk
Docket Number

Case 1:23-cv-11972-MJJ    Document 1-2    Filed 08/28/23    Page 57 of 59

Date Filed: 12/21/2022 11:00 AM
Land Court
Docket Number: 22 SM 003874

# COMMONWEALTH OF MASSACHUSETTS

## LAND COURT

## DEPARTMENT OF THE TRIAL COURT

___SUFFOLK_____, ss.                                     Case No. 22 SM 003874

US Bank Trust National Association, not in its individual capacity but solely as Owner Trustee for VRMTG Asset Trust

vs.

<u>Steven C. Fustolo</u>

## MOTION TO DISMISS COMPLAINT PURSUANT TO
## SERVICEMEMBERS CIVIL RELIEF ACT

Now comes the above named plaintiff and moves that the complaint be dismissed.

RE:  Mortgage covering real property in Boston numbered 115 Salem Street, Unit 11 of the 115 Salem Street Condominium given by Steven C. Fustolo to Mortgage Electronic Registration Systems, Inc., as nominee for Countrywide Bank, FSB dated 1/7/2008 and recorded in the Suffolk County Registry of Deeds in Book 42950 at Page 276.

/s/ *Kimberly A. Caplik*
Kimberly A. Caplik, Esq.
BBO No. 710070
Bendett & McHugh, P.C.
270 Farmington Avenue, Suite 151
Farmington, CT 06032
860-677-2868
kcaplik@bmpc-law.com
macourtmailings@bmpc-law.com
Attorney for Plaintiff

Document No. _____    Certificate No. _____

---

## ALLOWANCE OF MOTION AND JUDGMENT DISMISSING COMPLAINT

This cause came on to be heard on motion of the plaintiff that the complaint be dismissed, and was argued by counsel, and thereupon, on consideration thereof, it was

ADJUDGED and ORDERED that the complaint be, and it hereby is dismissed.

By the Court, _____
JUSTICE

**EXHIBIT 12**

Attest:                A TRUE COPY
ATTEST:
*Deborah J. Patterson*
RECORDER

DEBORAH J. PATTERSON
RECORDER

[SEAL]
Dated ____12/21/2022_____

**TWO ORIGINALS TO BE FILED**

LCM 13 (8/89)

**13-12692** Steven C. Fustolo

**Case type:** bk **Chapter:** 7 **Asset:** Yes **Vol:** i **Judge:** Janet E. Bostwick
**Date filed:** 05/06/2013 **Date of last filing:** 06/30/2023

# Case Summary

**Office:** Boston                                          **Filed:** 05/06/2013
**County:** MIDDLESEX-MA
                                                  **Terminated:**

**Fee:** Paid                                **Debtor discharged:**
**Origin:** 0                                      **Reopened:**
**Previous term:**                                **Converted:**
                                          **Debtor dismissed:**
                                      **Confirmation hearing:**
**Joint:** n
**Original chapter:** 7
**Current chapter:** 7

**Nature of debt:** consumer
**Related adversary proceedings:** 14-01193,14-01222,15-01015
**Pending status:** ,Awaiting Closing
**Flags:** NTCAPR, CredAdd, ASSET, 727OBJ, ADVPEND, DISCDENY

| | | |
|---|---|---|
| **Trustee:** Harold B. Murphy | **City:** Boston 0400 **Phone:** 617-423- | **Email:** mxc@hanify.com |
| **Trustee:** Richard King - B | **City:** Boston 0400 **Phone:** 617-788- | **Email:** USTPRegion01.BO.ECF@USDOJ.GOV |

**Party 1:** Fustolo, Steven C.   (Debtor)
      SSN / ITIN: xxx-xx-4889

| | | |
|---|---|---|
| **Atty:** Lane N. Goldberg | **Represents party 1:** Debtor | **Phone:** 617-328-0006 **Fax:** 617-328-0007 **Email:** lane@goldberglawma.com |
| **Atty:** William R. Moorman Jr. | **Represents party 1:** Debtor | **Phone:** 617-423-0400 **Email:** wmoorman@psh.com |
| **Atty:** David M. Nickless | **Represents party 1:** Debtor | **Phone:** 978-342-4590 **Fax:** 978-343-6383 **Email:** dnickless@npolegal.com |

**Location of case files:**
   **Volume:** CS1
The case file may be available.

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 07/19/2023 08:14:15 | | |
| **PACER Login:** joedyeculik | **Client Code:** | Fustolo v. Shellpoint |

**EXHIBIT 13**

| Description: | Case Summary | Search Criteria: | 13-12692 |
|---|---|---|---|
| Billable Pages: | 1 | Cost: | 0.10 |